IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

SECURITIES AND EXCHANGE
COMMISSION,

        Plaintiff,

    vs.                 **Case No. 06-4107-RDR**

SEAFORTH MERIDIAN, LTD.;
SEAFORTH MERIDIAN ADVISORS, LLC;
SEAFORTH MERIDIAN MANAGEMENT, LLC;
ALAIN A. ASSEMI; TIMOTHY J. CLYMAN;
JOHN D. FRIEDRICH and SCOTT F.
KLION, a/k/a JAMES S. TUCKER and
DAVID TANNER,
        Defendants.
    and

HENRI B. GONTHIER and FREDERICK
L. WINKLER,
        Relief Defendants.

_____

### MEMORANDUM AND ORDER

    This matter is presently before the court upon plaintiff's
motion for summary judgment against defendants Alain A. Assemi and
John D. Friedrich.  Defendant Assemi has failed to timely respond
to the motion.  Defendant Friedrich, proceeding <u>pro se</u>, has filed
a response.  Having carefully reviewed the arguments of the
parties, the court is now prepared to rule.

I.

    This is a civil securities fraud enforcement action brought by
the Securities and Exchange Commission (SEC).  The SEC brings this
action against defendants Seaforth Meridian, Ltd.; Seaforth
Meridian Advisors, LLC; Seaforth Meridian Management, LLC; Assemi;

Timothy J. Clyman; Friedrich; Scott F. Klion a/k/a James S. Tucker and David Tanner; and relief defendants Henri B. Gonthier and Frederick L. Winkler.  The SEC alleges violations of section 17(a) of the Securities Act, 15 U.S.C. § 77q(a)[First Claim], and section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5[Second Claim]. The complaint alleges that the defendant individuals created a hedge fund, defendant Seaforth Meridian Ltd., to defraud at least 70 investors of approximately $18 million through the fraudulent offer and sale of securities called "limited partnership interests."

In its motion, the SEC contends that the undisputed facts before the court show that it is entitled to summary judgment on its claims against defendants Assemi and Friedrich.  The SEC contends that the undisputed record shows that these defendants participated in a scheme to defraud investors of approximately $21,837,706 through sales of limited partnership interests in Seaforth Meridian, Ltd.  The SEC asserts that these defendants should be enjoined and ordered to disgorge the funds they fraudulently obtained.  The SEC also requests that the court order the defendants to pay prejudgment interest.

In his response, Friedrich begins by stating the following: "This written statement is not intended and shall not introduce new evidence into the record."  He then proceeds to express his

disappointment to all, including the investors in the limited partnerships, for the "current state of affairs" of Seaforth Meridian, Ltd.  He then asserts he will make "every effort" to pursue the litigation proceeding against Citigroup Bank in Switzerland.  He applauds the efforts of the receiver and wishes him further success in locating assets in this case.  He indicates he had no fraudulent intent in his actions with Seaforth Meridian and he continues to seek to protect the investors' capital.  He asks not to be enjoined so that he can continue to pursue the litigation in Switzerland.  He further suggests that if he is not enjoined, he will strive to provide restitution to the investors.  Friedrich, however, does not directly dispute any of the facts set forth in plaintiff's motion.

II.

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  The requirement of a genuine issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Essentially, the inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether

3

it is so one-sided that one party must prevail as a matter of law. Id. at 251-52.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  This burden may be met by showing that there is a lack of evidence to support the nonmoving party's case.  See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial.  See Anderson, 477 U.S. at 256.  A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of [its] pleading, but must set forth specific facts showing that there is a genuine issue for trial. Id.  Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.  See id.  The court must consider the record in the light most favorable to the nonmoving party.  See Bee v. Greaves, 744 F.2d 1387, 1396 (10th Cir. 1984), cert. denied, 469 U.S. 1214 (1985).  The court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."  Celotex, 477 U.S. at 327 (quoting Fed.R.Civ.P. 1).

III.

The facts set forth in the SEC's motion are undisputed in the record before the court.[1]  These facts show that the following has occurred.

In March 2004, Friedrich retained attorney Michael Lapat on behalf of himself, Assemi and others for the purpose of starting a new hedge fund.  Friedrich represented to Lapat that the "primary purpose" of the hedge fund was "to create revenue for The Fund from the acquisition and immediate liquidation of A rated (Moodys/S&P) or better institutional issued paper."  Friedrich further represented that the general partners of the hedge fund would "zealously protect the capital of all subscription holders principal" and take specific steps "to mitigate the defined risk factors."

In April 2004, Lapat formed Seaforth Meridian Management, LLC, in Florida ("Seaforth Management"), which was the managing general partner of the hedge fund.  Lapat also formed Seaforth Meridian, Ltd., a Florida limited partnership created for the purpose of soliciting limited partner investors and making investments.

Assemi and Friedrich each owned a 37.5% interest in Seaforth

_____

[1] In its motion for summary judgment, the SEC contends that Assemi and Friedrich should be precluded from offering evidence because each has recently asserted their Fifth Amendment rights in response to deposition notices in this case.  The court finds it unnecessary to reach this issue because neither defendant has offered any evidence contesting the facts asserted by the SEC.

Management and were its "managing members." Assemi, Friedrich and the other members of Seaforth Management had "full and complete charge of all affairs" of Seaforth Meridian. Friedrich was the "managing general partner" and wore "many hats." Assemi held himself out as "an established fund manager" with "European contacts." Investment decisions were made by "committee" and "collective consensus." Seaforth Meridian referred to the limited partners as "investors."

In May 2004, Seaforth Meridian retained Kaplan & Co. to perform accounting and auditing services for the partnership. Kaplan agreed to (a) provide monthly accounting services in connection with the verification of the net asset value of the partnership and the maintenance of the limited partners' capital accounts; (b) calculate the partnership's monthly rate of return; (c) prepare quarterly compiled statements of changes in the capital of the partnership; and (d) audit the partnership's yearly statement of financial condition and the related statements of income and changes in partners' capital.

Lapat also prepared offering documents, which the general partners used to solicit limited partners for Seaforth Meridian. In preparing the offering documents, Lapat obtained information from each of the general partners, including Assemi and Friedrich. For example, the general partners submitted written statements describing their educational background, employment history,

investment objectives and strategies, and disciplinary history, which Lapat used to make appropriate disclosures in the offering documents.   The general partners expressly agreed to update the written statements on a timely basis in the event the information was no longer true and accurate.

Assemi and Friedrich reviewed the offering documents prior to distribution to their potential investor partners.   Among other things, the offering documents made the following representations: (a) "The business of the Partnership is buying and selling fixed-income bonds as well as trading securities of medium to large capitalized companies, including stocks, warrants, rights and options of U.S. and non-U.S. entities." (b) "[I]t is the intention of the General Partner that the Partnership will concentrate the majority of its collective efforts upon fixed-income bond and instrument trading." (c) "Generally, the Partnership intends to execute only issues that have a CUSIP/ISIN number and are listed on Bloomberg, Euroclear, and/or Clearstream." (d) The general partners would engage in due diligence and prepare a Risk Analysis Model before making an investment decision:   "In short, the General Partner intends that no position will be taken unless there is a beneficial risk/reward analysis of taking the position."

The limited partners were entitled to receive 45% of the net profits and losses, which would be allocated to each limited partner based on the percentage of their capital contribution.

Seaforth Management was entitled to receive 55% of the net profits and losses.

From May 2004 to October 2005, Seaforth Meridian received capital contributions from approximately 75 limited partner investors totaling $21,837,706. Friedrich and Assemi used the majority of investor funds for offshore private placements.

Between October 2004 and March 2005, Seaforth Meridian transferred approximately $9 million to Quantum Analytics, an entity purportedly located in Scotland and operated by Raymond Coia. On November 17, 2003, the Financial Services Authority in the United Kingdom issued an order finding that Coia systematically misled investors as to the use of investor funds, misled and failed to provide information to the FSA during its investigation, and attempted to dissipate funds despite a court-issued asset freeze. The FSA permanently barred Coia from performing any function related to a regulated activity.

According to an undated "Fee Schedule," Seaforth Meridian would receive only 52% of the gross profits on the purported investment. Friedrich and Assemi agreed to distribute the gross profits in the following manner: Quantum would receive 25% of the gross profits; Sir Mats Allvik Von Sperling would receive 10% of the gross profits, for allegedly arranging Citigroup-Geneva to provide a "demand payment option;" Friedrich and Assemi would receive an undisclosed payment of 13%; and the balance (52%) would

be paid to Seaforth Meridian.

Friedrich and Assemi entered into the arrangement with Quantum through Seaforth Meridian (UK) Limited, an affiliated company established to do business in the United Kingdom.  Other than the Fee Schedule describing how the purported profits would be distributed, Seaforth Meridian's books and records do not include any offering documents or due diligence files with respect to this purported investment.

Coia transferred investor funds to individuals and entities not associated with Seaforth Meridian for no verifiable investment purpose.  In one circumstance, Coia transferred approximately $1.4 million to a law firm, which subsequently used the funds to purchase a farm in Scotland for John MacIntyre, a close personal friend of Coia's.  There are no known or apparent investments on behalf of, or for the benefit of, the Seaforth Meridian limited partners.

Quantum sent approximately $647,090.96 directly to Friedrich and Assemi's personal bank accounts between November 2004 and July 2005.  On March 18, 2005, Assemi transferred $255,000 of the funds he received from Quantum to Seaforth Meridian.  The balance of the funds received by Friedrich and Assemi ($392,090.96) was not shared with the limited partners of Seaforth Meridian.  Quantum has not returned any part of Seaforth Meridian's purported investment.

Between February 2005 and May 2005, Seaforth Meridian

transferred $4,850,000 to Meriton AG, which is purportedly located in Zug, Switzerland. Assemi was a managing director of Meriton AG since at least March 2005. Friedrich and Assemi executed a "Fiduciary Mandate" on June 9, 2005 with Roger Kipfer of Meriton. The Fiduciary Mandate authorized Meriton to manage, without any restrictions, all of the money Seaforth Meridian transferred to Meriton. Other than this letter agreement, Seaforth Meridian's books and records do not include any offering documents or due diligence files with respect to this purported investment. Meriton AG and Kipfer sent approximately $74,470.46 directly to Assemi's personal bank account between February 2005 and April 2005 for no apparent reason. Assemi did not share these payments with the Seaforth Meridian limited partners. There are no known or apparent investments on behalf of, or for the benefit of, the Seaforth Meridian limited partners. None of Seaforth Meridian's funds transferred to Meriton have been returned.

In July 2004, Seaforth Meridian transferred $1,050,000 to Mansell Capital Partners. The funds were to be held "in trust" by Hartsfield Capital Group, an entity located in the Atlanta area. Pursuant to a letter agreement, Hartsfield would hold the funds for a 60-day period, and Seaforth Meridian would receive a monthly rate of return of four percent. The funds were to be returned on the 61st day. Other than the letter agreement, there are no records in Seaforth Meridian's files, such as offering documents and due

diligence files, describing the nature of the transaction.  Mansell transferred the funds to a lawyer in Canada.  Seaforth Meridian received the interest payments contemplated in the letter agreement during the initial 60-day period.  At the end of the 60-day period, the funds were not returned to Seaforth Meridian, but Mansell continued to make monthly interest payments.  Those interest payments, however, ceased in January 2005, and in March 2005, Mansell notified Seaforth Meridian that the principal was at risk of non-payment.  Assemi and Friedrich did not inform the limited partners of this development.  Between August 2004 and January 2005, Mansell made payments to Assemi's personal bank accounts totaling approximately $31,320. Assemi did not share these funds with the Seaforth Meridian limited partners.  To date, none of the funds transferred to Mansell have been returned to Seaforth Meridian.

Seaforth Management, including Assemi and Friedrich, did not invest the majority of investor funds in A-rated or better fixed-income bonds, or securities of medium to large capitalized companies as expressly represented in the offering documents. Seaforth Management, including Assemi and Friedrich, did not invest the majority of funds with issuers that have a CUSIP/ISIN, or that are listed on Bloomberg, Euroclear and/or Clearstream, as expressly represented in the offering documents.  Seaforth Management, including Assemi and Friedrich, did not engage in any meaningful

due diligence with respect to its purported investments in Quantum, Meriton and Mansell, and prepared no Risk Analysis Models. Seaforth Management, including Assemi and Friedrich, failed to disclose to the limited partners that Assemi was a managing director of Meriton AG. Seaforth Management, including Assemi and Friedrich, did not disclose to the limited partners the fact that they received undisclosed compensation for investing with Quantum, Meriton and Mansell. Seaforth Management, including Assemi and Friedrich, failed to disclose to the limited partners that Assemi was sued for investment fraud in New York on September 15, 2004, a case which was filed at the time Seaforth Meridian solicited limited partner investors for the hedge fund.

In the fall of 2004, Kaplan was unable to confirm financial information based on the limited information Seaforth Management provided. In January 2005, Kaplan told Friedrich and Assemi: "Your reluctance to provide us with documentation and substantiation for certain transactions, which in our professional opinion is necessary to verify your results and provide financial statements, precludes us from being associated in any way with your financial statements or verifications." Similarly, Friedrich and Assemi learned that Lapat would no longer represent Seaforth Meridian due to the partnership's reluctance to produce information that was necessary for Kaplan to prepare appropriate financial statements. Lapat told Friedrich and Assemi: "Be advised that in

my opinion, the discharge of the Fund's Auditor requires disclosure to existing investors of that fact as well as the circumstances surrounding their discharge." Seaforth Management, including Assemi and Friedrich, did not disclose the fact that Lapat and Kaplan were no longer willing to provide professional services to Seaforth Meridian.

Seaforth Management, including Assemi and Friedrich, failed to disclose to the limited partners the true identity of one of the general partners, Scott Klion, or that he had been enjoined in 1999 from engaging in fraudulent investment activities, and was ordered to disgorge $1.172 million and to pay a $110,000 civil penalty. Later, when Klion was named as a defendant in SEC v. Capital Enhancement Club in May 2004, Friedrich removed Klion as a general partner in Seaforth Management, and omitted all references to Klion in subsequent versions of the offering documents. There is no evidence, however, that Seaforth Management disclosed to its limited partners the reason for Klion's removal as a member of Seaforth Management.

Assemi received $577,598.65 and Friedrich received $277,339.64, directly and indirectly, from the sale of limited partnership interests. As noted above, Assemi and Friedrich failed to disclose to the limited partners the compensation they received directly from Quantum, Meriton and Mansell.

IV.

The federal securities acts prohibit the use of fraudulent schemes or material representations or omissions in the offer or sale of securities. See 15 U.S.C. 77q(a); 15 U.S.C. 78j(b); 17 C.F.R. 240.10b-5. The offer and sale of limited partnership interests are usually considered "investment contracts." See SEC v. Merchant Capital, LLC, 483 F.3d 747, 755 (11th Cir. 2007). Investment contracts are securities under 15 U.S.C. 77b(a)(1) and 15 U.S.C. 78c(a)(10). See Goodman v. Epstein, 582 F.2d 388, 406 (7th Cir. 1978), cert. denied, 440 U.S. 939 (1979). The limited partnership interests offered and sold in this action constitute "investment contracts," and therefore are securities as defined by the federal securities laws. The investors provided money to Seaforth Meridian with the reasonable expectation that profits would be derived from the efforts and purported expertise of the members of Seaforth Meridian. The investors assumed a passive role; they were not required to exert any effort to generate a profit. The investors were entirely dependent upon the services and expertise of the Seaforth Meridian members.

A. Injunctive Relief

The SEC seeks a permanent injunction against Assemi and Friedrich for future violations of the aforementioned statutes. To obtain an injunction under either 20(b) of the Securities Act or 21(d) of the Exchange Act, the SEC must prove that, unless

14

enjoined, there is a reasonable and substantial likelihood that a defendant will commit future violations.  SEC v. Pros International, Inc., 994 F.2d 767, 769 (10th Cir. 1993).  The court considers the following non-exhaustive list of factors in determining the likelihood of future violations:  "the seriousness of the violation, the degree of scienter, whether defendant's occupation will present opportunities for future violations, and whether defendant has recognized his wrongful conduct and gives sincere assurances against future violations."  Id.

A violation of the anti-fraud provisions of the securities laws requires that the alleged misrepresentations or omissions be material.  A fact is material "if there is a substantial likelihood that a reasonable shareholder would consider it important" in making an investment decision.  Basic Inc. v. Levinson, 485 U.S. 224, 231 (1988).  For an omission to be material, "there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available."  Id. at 231-32.

To establish a Section 10(b) and/or Rule 10b-5 violation, the SEC must prove the following:  "(1) a material misrepresentation, (2) in connection with the purchase or sale of a security, (3) scienter, and (4) use of the jurisdictional means."  United States SEC v. Maxxon, Inc., 465 F.3d 1174, 1178-79 (10th Cir. 2006), cert.

denied, 127 S.Ct. 2116 (2007).  There is no requirement of proof of scienter for a violation of 15 U.S.C. 77q(a).  Aaron v. SEC, 446 U.S. 680, 697 (1980); SEC v. Haswell, 654 F.2d 698, 699 (10th Cir. 1981).

There is no question that Assemi, Friedrich and the other general partners made numerous misrepresentations to entice their partners to invest in Seaforth Meridian.  As set forth previously, they represented to the investors that the partnership would do the following:  (1) primarily buy and sell fixed-income bonds and trade securities of medium to large capitalized companies; (2) concentrate their efforts on fixed-income bond and instrument trading; (3) generally trade securities that have CUSIP/ISIN numbers and which are available on Bloomberg, Euroclear and/or Clearstream; and (4) prepare risk models before making an investment decision.  The purpose of these representations was to suggest that the funds would be invested in specific types of investments, and that the general partners would minimize investment by analyzing risk factors.  As indicated by the prior facts, Assemi, Friedrich and the general partners "invested" the funds in a manner that was wholly inconsistent with the statements in the offering documents, and failed to prepare any meaningful risk analysis models.  In addition, Assemi and Friedrich failed to disclose other significant facts to their investor partners.  These facts included:  (1) the termination of outside counsel and the

accountant; (2) the filing of securities fraud litigation against two of the general partners, Assemi and Klion; (3) the receipt of payments to Assemi and Friedrich directly from Quantum, Meriton and Mansell; and (4) the placement of a substantial portion of funds with an entity in which Assemi had an interest.   These misrepresentations and omissions were material since they constituted the type of information a reasonable investor would consider significant.

There is also little question concerning the scienter of Friedrich and Assemi.  The undisputed facts show that they engaged in a scheme to defraud their limited partners for their personal benefit.  Assemi invested funds with an offshore organization in which he was a director and caused the entity to pay himself approximately $75,000.00 in undisclosed kickbacks.  Assemi and Friedrich also engaged in self-dealing by negotiating and receiving other undisclosed payments from Quantum and Mansell.

As a consequence of their actions, Assemi and Friedrich have violated 17 U.S.C. § 77q(a) and 15 U.S.C. §78j(b) and 17 C.F.R. § 240.10b-5.  The court finds that injunctive relief is appropriate here, particularly given the seriousness and scope of the violations.  The defendants have failed to adequately recognize the wrongs they have perpetrated.  Without injunctive relief, the court believes that they will engage in such conduct in the future. Accordingly, the court shall grant the injunctive relief sought by

plaintiff.

B.  *Disgorgement*

"The SEC's power to obtain injunctive relief has been broadly read to include disgorgement of profits realized from violations of the securities laws." SEC v. Clark, 915 F.2d 439, 453 (9th Cir. 1990).  The deterrent effect of an SEC enforcement action would be greatly undermined if securities law violators were not required to disgorge illicit profits. SEC v. First Jersey Securities, Inc., 101 F.3d 1450, 1474 (2nd Cir. 1996), cert. denied, 522 U.S. 812 (1997).  Disgorgement is remedial rather than punitive. Maxxon, Inc., 465 F.3d at 1179.  The court has broad discretionary powers to determine the amount by which the defendant profited from the wrongdoing. Id.

The record before the court shows that Assemi received approximately $577,598.65 and Friedrich received approximately $277,339.64, directly and indirectly, from the fraudulent scheme. The defendants received both undisclosed kickbacks and management fees during the course of the scheme.  Neither would have received any of the monies but for their fraudulent conduct.  Accordingly, the court directs Assemi and Friedrich to disgorge these amounts to the SEC.

C.  *Prejudgment Interest*

The SEC has also requested prejudgment interest on the monies that they received during the course of the fraudulent scheme.  "An

18

award of pre-judgment interest in a case involving violations of the federal securities laws rests within the equitable discretion of the district court to be exercised according to considerations of fairness." <u>Chris-Craft Industries, Inc. v. Piper Aircraft Corp.</u>, 516 F.2d 172, 191 (2nd Cir. 1975), <u>rev'd on other other grounds</u>, 430 U.S. 1 (1977).

The IRS underpayment rate is appropriate for calculating prejudgment interest in SEC enforcement actions. <u>First Jersey Securities</u>, 101 F.3d at 1476. That rate of interest "reflects what it would have cost to borrow the money from the government and therefore reasonably approximates one of the benefits the defendant derived from its fraud." <u>Id</u>.

Plaintiff seeks prejudgment interest of $39,440.00 for Assemi and $18,937.50 for Friedrich. The court agrees with the amounts requested by plaintiff. The amount for Assemi is based upon a principal amount of $577,598.65 with the application of the IRS underpayment rate from September 14, 2006, when plaintiff filed this action. The amount for Friedrich is based upon a principal amount of $277,339.64 with the same IRS underpayment rate and the same date as that applied to Assemi.

**IT IS THEREFORE ORDERED** that plaintiff's motion for summary judgment against defendants Alain A. Assemi and John D. Friedrich (Doc. # 106) be hereby granted. Judgment shall be entered for plaintiff and against defendants Assemi and Friedrich.

19

**IT IS FURTHER ORDERED** that defendants Alain A. Assemi and John D. Friedrich and their agents, servants, employees, attorneys and all persons in active concert or participation with them who receive actual notice of this memorandum and order by personal service or otherwise, are permanently restrained and enjoined in the offer of sale of any securities by use of any means or instruments of transportation or communication in interstate commerce, or of the mails, from, directly or indirectly (1) employing any device, scheme or artifice to defraud; (2) obtaining money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (3) engaging in any transactions, practices or courses of business which would operate as a fraud or deceit upon any purchaser or prospective purchaser.

**IT IS FURTHER ORDERED** that defendants Alain A. Assemi and John D. Friedrich and their agents, servants, employees, attorneys and all persons in active concert or participation with them who receive actual notice of this memorandum and order by personal service or otherwise, are permanently restrained and enjoined from making use of any means or instrumentalities of interstate commerce, or of the mails of any facility or a national security exchange, directly or indirectly, in connection with the purchase or sale of any security (1) to employ any device, scheme or

20

artifice to defraud; (2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; (3) to engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person; or (4) to use or employ manipulative or deceptive device or contrivance in contravention of a rule or regulation prescribed by the Securities and Exchange Commission.

**IT IS FURTHER ORDERED** that the defendants are directed to disgorge the following amounts:  Alain A. Assemi--$577,598.65, and John D. Friedrich--$277,339.64.

**IT IS FURTHER ORDERED** that the defendants are directed to pay the following amounts of prejudgment interest:  Alain A. Assemi--$39,440.00, and John D. Friedrich--$18,937.50.

**IT IS SO ORDERED.**

Dated this 1st day of November, 2007 at Topeka, Kansas.

s/Richard D. Rogers
United States District Judge

21